Thank you, Your Honor. This appeal involves the agency's Round 3 re-evaluation. The first XPO when it downgraded XPO's announced past performance scores from the prior two rounds. The key question is this. Does the agency have to re-open discussions when information given by the agency to a bidder, accurate when given, is no longer accurate because of a re-evaluation in which the agency, based on the same proposal materials, significantly downgrades the XPO and the GAO is uniform that it does. In rounds 1 and 2, the agency graded XPO as having relevant and very relevant references. It evaluated as having the highest confidence score, a substantial confidence, but then it downgraded that after telling XPO it didn't have to supplement its proposal at all, having no questions of it, no concerns stated, to two of those references being not relevant, the other moving from very relevant to relevant, and then downgrading the overall confidence score as well. But it didn't give XPO the opportunity to address what the agency's newfound concerns were. In that situation, Your Honor, they had to re-open and allow us the opportunity that they'd given to others as well. The government's response is that the agency had indicated before the re-evaluation that it didn't intend to re-open discussions, that they were closed. All the cases, Your Honors, finding misleading discussions in exactly this circumstance were in exactly the same procedural posture as this. The government had said, discussions are closed, now give us your final price revisions, your FPRs, or your best and final offers, your BFOs. And then, though, they did a re-evaluation internally without the offeror changing their proposal materials and downgraded them. The GAO, the courts say, you have to re-open in that circumstance. Discussions are closed in this field does not mean, and there's no way they'll ever be opened again. It means they're closed unless it's in the government's best interest to re-open or unless the law requires it. In this situation, the law required it. Now, the Court of Federal Claims incorrectly held that XBO's protest on this ground was untimely. Obviously, XBO could not know the results of its re-evaluation and its downscoring until it had happened. The question of whether there had to be discussions depend on whether you were going to be downgraded or not. I'm sorry, Your Honor, I don't understand the question. I thought your complaint is that they had to open the discussions and you're not disputing that you knew that they were not going to open the discussions, is that right? I don't dispute that they didn't say they were going to re-open it when they started doing their re-evaluation. Right, so if you knew or there was patent ambiguity or something about whether there were going to be further discussions and you thought, we really better have some more discussions, why is that not classic blue and gold? You don't wait to see if you win before you figure out. The whole point of blue and gold is that the terms of the solicitation have to be settled through formal protests and what not before you know. What we are challenging here is the re-evaluation itself. It's okay to say we're not going to take any more discussions. However, if events unfolded like they did and which with the same RFP criteria, the same proposal materials, they now substantially downgrade, now what they've said earlier in discussions when they had them with us is not accurate when they told us we had the highest scores and very relevant references. That's misleading to us and they must re-open as a matter of law in order to give us the same opportunity they gave to others to address their concerns. As we showed in Mr. Dyer's affidavit, it was prejudicial because there was a lot we could have said about these newfound concerns that they had. Before Round 3, you did know the agency was going to be re-evaluating the performance of yourself and yourself. Actually, all that the GAO recommended and the agency said it was going to follow that recommendation was that it re-evaluate Crowley. Re-evaluate Crowley because the agency had misunderstood the scope of the analysis it needed to do. The agency only looked at the first two years of the contract and didn't appreciate that they should really be analyzing the past performance situation against really a seven-year contract. That's what the government argues but it's not true. If you read the GAO decision, you'll see it's not accurate. There's nothing in the evaluation materials for Round 1 that said they limited it to two years. The government post-talk, the agency came in at GAO and said, okay, let's just look at it for two years. But that's not what they did. GAO said there's no explanation in this record as to why references that are this small don't fit under the little or none category for relevance. Even if I take their post-talk assertions that they only compared it against two years, they're still too small. There's still no explanation in the record why it doesn't fit under little or none. That's the back and forth of the GAO. When we went into this situation, even if we assume that, okay, they might look at us too, we have no idea what the particulars are, whether they will downgrade us. We don't know what the particulars or why they downgraded us. There's no final agency action for us to complain about at this point. We know that the law is... If your grievance is you had to have the opportunity to talk to them, you either knew ahead of time that you were not going to have that opportunity or you didn't. I don't see any... That's not my grievance. My grievance is that they re-evaluated me and downgraded me and had new concerns and came up with new sub-criteria without changing the RFP itself. And so what they told me before in discussion is no longer accurate. And the law is when that happens, then you must reopen and allow discussions to go forward again. Because what you told them before is no longer accurate. And it's not the bidder's fault. Because it's looking at the same proposal materials. The GAO says that the key question here is are you looking at the same proposal materials or not? And if you're looking at the same proposal materials, you must, as a matter of law, reopen because what you did before is misleading. I don't understand. There was no change to the solicitation and I didn't think there was a change to the evaluation process. What is the change apart from the one you actually requested when you successfully had your round two bid protest? What did the agency do differently this time that you should have had a right to respond to? We did not ask for the RFP evaluation criteria to be changed. I want to make sure that's clear even though there was some suggestion of that in the government's brief. Our whole protest was they didn't apply the RFP's evaluation criteria consistently with what it says. I know your protest was they didn't evaluate past performance properly. Yes, and they re-evaluated it. They came up with additional explanations. They had a few additional criteria they were going to apply. And they misdid a lot of stuff. And suddenly our evaluation from being the very highest is now not relevant and dropping the overall ratings. And that made what they told us before misleading. We could not have known that until we got the information about what the final agency re-evaluation was. It is simply not the rule of law that they might re-evaluate us. They might. You were told you were going to be re-evaluating all of the offerors' proposals. That part you were told. No, we weren't told that. GAO recommended that they re-evaluate Crowley's. However, even if we knew that, the standard that the Court of Federal Claims put up, you should have known it was likely you'd be re-evaluated. That doesn't give us enough to protest on. We still have to know what's the result of that re-evaluation. What are the particulars? After the GAO, what did the agency say it was going to do in round two? We quote that in our brief. It says it's going to follow the recommendation of the GAO. And the GAO's recommendation was that it re-evaluate Crowley's past performance. Are you saying XPO never had any notice in any way, shape, or form that XPO's past performance part would be also taken a look at in view of what the GAO instructed? There was never any formal notice given by the contracting officer to our client that we would be re-evaluated. There was indication during the litigation that they would probably do that. During the litigation? You mean in the GAO? No, at the court. It said we're going to follow the recommendation of the GAO. And by the way, that means we're going to probably re-evaluate you as well. So the first time everybody went to the Court of Federal Claims? Correct, Your Honor, in the round two litigation. But again, okay, we don't know for sure that's what's going to happen. Even if we do, we don't know what the result is. So there's nothing for us to do. We're going to have to wait until the case is reopened when we got the results. And we also could rest easy, if you will, on that. Can you help me on this? Suppose for purposes of this question that you knew that you were going to be re-evaluated. Taking that as a given, what is it that the agency said to you earlier that you could rely on as not changing when they actually did the round two evaluation? There was nothing. I mean, if they said something to you before the GAO and then they say, oh, we're going to re-evaluate, it seems to me the things they said before, I don't know in what context they said these things except their initial evaluations. But once they say we're going to re-evaluate, are they bound by things that they said? They're not bound by it, but there's also no reason for us to think that anything would reasonably change. And we also could rely on the rule of law that I've been talking about, which is that if they do make a material change and make what they had told us previously now inaccurate, then they have a legal requirement to reopen and give us a chance to address those things. That's what Raytheon says. That's what the GAO says repeatedly. So that's a situation we found ourselves in. We don't have to anticipate that the agency is going to violate the law. And you kept saying how they're not treating you the same as everyone else, but it's my understanding they also treated you and Crowley the exact same way with regard to this. Absolutely not, Your Honor. Did they downgrade Crowley's rating on past performance as well and not give them an opportunity to respond? No. When they downgraded Crowley, they gave them an opportunity to respond. When they downgraded GENCO, they reopened it. After round three. After round three. Not after round three. After round two. After round one, they had both GENCO and Crowley. The round that you're referring to, that you're saying that you didn't get the opportunity to have a discussion with the agency. It's true for XBO as well, right? Crowley. Crowley. Sorry. They did not reopen for Crowley, but they had previously identified what they had as a concern and given them a chance to supplement, and they did. They said your experience in air TDEF, so what are you going to do about it? Crowley comes in with 34 new references and it comes in with more information. That's exactly what they should have done for us if they had a similar concern about these things, but they didn't do it. Let's save the rest of your time and hear from the closing counsel. Thank you, Your Honor. Mr. Harlow. Well, good afternoon. May it please the court. The discussions-based argument that we've been hearing from XBO, it originates with a protest from XBO that paralleled the protest that we were just discussing. In that protest, XBO argued that the agency had been too lenient on small pass performance and that pass performance that was too small had been too leniently rated. Now from that, the GA ruled in XBO's favor and Transcom said that it would initiate a corrective action plan to re-evaluate pass performance. That spawned a protest from Crowley in the Court of Federal Claims where the corrective action plan to re-evaluate pass performance was put before the trial court. Now, I know we've been talking a lot about waiver, but it's even more than that. You have to remember that during that protest, XBO defended the corrective action plan that was put forward by the government. And to say that they didn't have notice of exactly what that corrective action plan would look like is simply not true. I thought Mr. Claybrook said that at least until you got to the Court of Federal Claims, and I could be misunderstanding, they had no idea that they were going to be re-evaluated. Well, I can't speak for what they would have known or not known, but to have- No information from the government or the GAO told them that they were going to be re-evaluated. Not specifically. There had really been no communication from- What point did they learn that they were going to be re-evaluated? They learned that they would be re-evaluated at the status conference of that protest because the issue came up then. And then if you look at the brief of the briefs that I filed in the trial court that actually block quoted in the briefs before this court, we laid out a step-by-step plan of how this would work. And because to do the re-evaluations would impact both of them, both of them had to be re-evaluated. And along with that, we made it explicitly clear that discussions were not going to be reopened. Now, Mr. Claybrook has expressed some surprise that they were also going to be re-evaluated. And I'm not in a position to evaluate that surprise, but for that to be true, they would have had to have expected Crowley to be evaluated under some standard that no longer applied to XBO. So you would have had both remaining wars being evaluated by different criteria. I don't know how they could be surprised that they both had to be impacted by this. Okay, but so you said at a minimum, they were told at the status conference before the court of federal claims and they were both informed that there would be no further negotiations. Correct. And is it your view that if they had a problem with that, they had a duty to object at that time and get on the record that they have? Yes, ma'am. I think the minute that I put in there that discussions were not going to be reopened, if they no longer wanted to defend that plan alongside me, they had every opportunity to either join Crowley's protest or have their own protest. But forget about joining Crowley's protest or have their own, or they could just say to you, wait, we want to put in a number of new references. If you're going to apply this to us, they put in, what, 30 new references at some point, he said, when you questioned something about them, XPO could have said, wait a minute, timeout. If you're reviewing our past performance and you're doing it under this new criteria, we'd like to put some new references. Yes, ma'am. And I apologize. I think I was skipping all the way to the protest stage of that. But you're absolutely right. If they had raised it, there could have been a conversation about that. And if they had wanted to have discussions, I don't know where that would have gone at that point, but we would have at least raised the issue when it should have been raised and we could have worked through that then. And that was the first reason that the could have figured out where all the parties were on this. And if discussions needed to be reopened, or it was just, it was the smarter path at the time, we could have dealt with it then. And the trial court looked and said, you knew this was how it was going to play out and you did nothing about it. And in fact, you joined the government. So what you just said seems, as I understand things, responsive to the argument that discussions were necessary in order to make non-misleading pre-corrective action discussions. What about the unequal? That Crowley, I think Mr. Claybrook said, had some deficiencies in its submission that the agency contacted it about. And yet when the agency in conducting its re-evaluation found new deficiencies that is newly identified for the agency deficiencies in XBO, it didn't contact XBO about them. Why is that not a... Right. And it gets a little confusing here because there's a lot of different, what the parties have taken to calling rounds of this procurement. At the start, what is not disputed is that at every individual round, everyone was treated equally. So from the What Crowley's point is... Let me see if I can try to respond and see if I understand the facts right. Isn't the scenario that Judge Toronto just explained, the post round two scenario, not the post round three scenario? Yes, ma'am. Post round three, nobody was given an opportunity to introduce new references or take corrective action. That is absolutely correct. And in round two, the discussions were centered on the each offeror's proposal. So they each had the opportunity to respond to whatever issues may have come up in their proposals during that period of time. And they were both given the opportunity to deal with those... But XBO's response to that would be, yes, but you didn't have any concerns with our past performance after round one or after round two. So wait, you're doing great. Wait, let me respond. You wouldn't do that. You had problems with Crowley and you let them respond. And then you went ahead and the first time that you demonstrated any problems with XBO's past performance was post round three and they felt a little blindsided. Yes. And that's what the trial court's second basis for its opinion was rejecting that argument. What they point out is the difference between the law that Crowley, or excuse me, that XBO relies on is where the agency has changed the evaluation criteria and told one subset of offerors, but not another. Or in this case, told one offeror and told the other. That situation is obviously unfair. It's obviously unequal, but that's not what happened here. To any extent that the criteria changed, I think we get into the semantics of whether or not their interpretation of the solicitation was corrected by XBO's protest or the criteria itself changed. What is undisputed is that there were no conversations with either one of them about that. So they were dealing with equal information at the time. And that's the second basis for the trial court's decision is that what XBO hangs its hat on is the fact that its ratings changed. That's not what the case law is looking at. The case law is looking at did the criteria change and somebody was told and somebody was not told. To the extent that we all disagree whether or not the criteria changed or not, it's undisputed that Crowley was not given information and XBO not. They were both coming from the same place. And the fact that their ratings changed, I think the trial court pointed out that they had to have expected that XBO's smaller contracts would no longer be relevant. And I think you see a line in XBO's brief that the common sense approach would have been for them to assume that their ratings would not have changed. I would assume it to the court is that there's no possible way that can be true. Because if the smaller contracts for one were deemed not relevant, the smaller contracts for the other also had to be deemed relevant or irrelevant so that they can be treated the same. If there are no further questions, I think the court... Thank you, Mr. Harlow. How do I say your name? Staccolato. Staccolato. It sort of looks like it sounds once you get used to it. Staccolato. Got it. Staccolato. It's a butchering of Italian, but it is what it is. I wanted to just help with the timeline here because we've been at this, chipping at this protest for a long time. And Mr. Claybrook is saying, oh, Crowley had all of these discussions and we didn't have them. The discussions that were had, and I'm using that term very generously with him. What the parties were told is, here are your interim ratings. And that's what we were told. We were told in rounds one and two, and as was XPO, exact same information, received the same one pager. Your interim ratings are X. Well, when those came in, either offeror had the ability to change their proposals in any way they wanted to as a result of that information before FPRs came in. That is exactly, it was identical for both offerors. It just happened that Crowley took the opportunity, having received the exact same communication about its ratings, to change its proposal in the past performance area. XPO changed its proposal, presumably, in other areas based upon, again, the information that it received identically formatted, just simply the ratings of the different offerors. There was no difference here. In round three, nobody knew anything. They got the exact same communications. There was no opportunity to change your proposal, no opportunity for discussions, no different information set. We've had a conversation here about could XPO have known that it needed to protest beforehand. Absolutely. I mean, it's almost remarkable how divorced from the facts Mr. Claybrook's argument is. XPO argued at the GAO in round two that Transcom's evaluation of past performance was unreasonable. It argued that it was unreasonable because it had used an incorrect, comparing it against the baseline originally of the entire seven-year contract, these contracts are too low. And then the agency came back and said, well, we used a two-year figure. Again, XPO says, that's wrong too. Your evaluation is unreasonable. Not only is it unreasonable with respect to magnitude, it's unreasonable with respect to scope, it's unreasonable with respect to complexity, and you didn't document it well. Well, they won that. And so how could they possibly have been misled? If anybody knew how Transcom was going to react, it was XPO who argued for, advocated for this change. And maybe they didn't know what their ultimate rating would be, but they knew that Transcom would be evaluating past performance clearly for both offerors. There's nothing in the record that suggests that XPO's contracts were ever evaluated against any other baseline than the exact same one that applied to Crowley, that they would be evaluated against a full scope of the DFTS contracts for scope, magnitude, and complexity. And so it's just not credible that they wouldn't have known this. And it's not credible that they could have been misled by information in an evaluation they themselves called unreasonable. So there was nothing misleading, nor was there anything unequal. The offerors were treated entirely equally. And this is evidenced by nothing else other than the fact that our rating got dropped to neutral. Nothing favorable, nothing unfavorable. So any favorable inferences that Mr. Claybrook says came to Crowley's benefit, there is none. There is nothing favorable to be drawn from a neutral past performance evaluation rating as a matter of law. The one thing we haven't talked about here, and I only want to talk about it briefly, is the claim that the agency switching from past performance to the best value determination, that the agency couldn't consider at all corporate experience in its final award decision. And that's just simply inconsistent with the terms of the solicitation. The solicitation itself says that proposals will be evaluated against five factors. The first of those five factors is corporate experience. There is nothing in the solicitation that says that it will fall out of the calculus. There's nothing that says that the agency has to ignore what it's learned about corporate experience. So the solicitation says what it says. Again, if XPO did not want corporate experience ever considered as a factor, that should have been something it protested at the outset of the solicitation. Having put it into the solicitation, it clearly had some meaning to the agency that it wasn't required to ignore. Unless the court has additional questions? No, I would just let you know that when you raise an argument in rebuttal, an oral argument that wasn't raised in the affirmative, now you've opened the door for him to address it in his rebuttal where prior he couldn't. So by deciding to branch into that separate argument, I just want you to know you've opened the door and now he's free to talk about new matters that he didn't talk about before. So you gave him that opportunity by doing that. Just an FYI for oral argument in the future. Go ahead, Mr. Claybrook. Thank you, Your Honor. Just quick bullet points. Procurement must be reviewed as a whole, not round by round. In all these cases that we've been talking about, say exactly that. Also, even if there's going to be a reevaluation as to total contract value, which was the big crowdy problem, as we pointed out in our briefs, the government mis-evaluated our total contract value, not price, by not including the freight under management, the transportation costs when this procurement does include that in the price. You have to compare apples to apples. Let me point out as well that there was no change to the RFP here, so we aren't in a blue and gold situation or a comment situation. And I can't state it any better than the government itself did in round two when Crowley was protesting and saying, oh, J.O. has recommended that you change the evaluation criteria and that we don't know what our corrective action is going to be. Government says there's been no change to the evaluation criteria. J.O. did not recommend that. We're not doing it. And if you've got a complaint about the corrective action that's taken on you, it's not right to complain about it now. Wait until it's done when there's been final agency action and then protest it. Exactly what's going on here. On corporate experience, we're going to rely on our briefs, Your Honor, as you did reopen that in terms of the best value, but the law is clear that corporate experience and the RFP is clear, may not be considered or any no-go considerations can not be considered in a trade-off. One final remark, if I may, and it's just to give a status update on our pending motion to stay. The transition has gotten started, but it's not very far along at all. The first site of any size is the transition is basically starting today. So we would ask the court to consider our motion to stay in order to prevent any further harm to XBO and the government. Thank you, Your Honor. Thank all counsels.